# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENO CONTRACTING, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRUM & FORSTER SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | Case No.: 18-CV-0450 W (JLB) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 29]** |

Pending before the Court is Defendant's motion for partial summary judgment. [Doc. 29.] The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion.

//

//

//

//

# I. BACKGROUND

## A. The Coyle/Reno Joint Venture

On August 12, 2011, Plaintiff Reno Contracting entered into a joint venture agreement with Coyle Residential, Inc. for the purpose of engaging in a construction project at 3471 North First Street, San Jose, California, and 251 Brandon Street, San Jose, California ("the Riverview Project"). (*Joint Statement of Disputed and Undisputed Facts ("JSDUF")* [Doc. 41] ¶¶ 1, 3.)

The Coyle/Reno joint venture ("Coyle/Reno") was to serve as the general contractor for the Riverview Project, with Silverline Construction, Inc. ("Silverline") serving as a subcontractor. (*JSDUF* [Doc. 41] ¶¶ 4–5, 9.) According to Plaintiff, the terms of the joint venture agreement were such that Coyle Residential was responsible for on-site supervision of construction activities of the Riverview Project (including subcontractors), while Reno Contracting handled off-site administrative duties. (*JSDUF* [Doc. 35] ¶¶ 86–87[1].)

Coyle/Reno and Silverline entered into a Master Subcontract Agreement ("MSA") that governed their respective rights and obligations as to the Riverview Project. (*JSDUF* [Doc. 41] ¶ 10.) The MSA specified:

> Subcontractor shall not make any changes to the work set forth in the Subcontract Documents, either as additions or deletions, without the written direction of Contractor.

(*Id.* [Doc. 41] ¶ 12.) It further specified:

> Subcontractor shall immediately provide written notification to Contractor if a written direction could result in additional costs or time of performance so that Contractor has sufficient time to take actions to minimize any additional

---

[1] Defendant objects to these paragraphs on relevance grounds. The objections are overruled.

2

costs or time, and has sufficient time to provide notification to Owner in accordance with the Contract.

(*Id.* [Doc. 41] ¶ 13.)

On March 19, 2013, Silverline executed a stop payment notice on the Riverview Project. (*JSDUF* [Doc. 41] ¶¶ 14–15.) This notice asserted that Silverline "ha[d] furnished work, labor, equipment, material, and/or services" for the Riverview Project and that Coyle/Reno owed Silverline $3,895,214.00 for these labor and services. (*Id.* [Doc. 41] ¶ 17.)

Reno Contracting contends that Coyle Residential failed to "competently provide supervision of the construction activities at the Riverview Project[,]" which caused "significant problems on the construction site[.]" (*JSDUF* [Doc. 41] ¶ 98.) It contends that in June of 2013, "Coyle Residential effectively abandoned the joint venture, leaving Reno Contracting solely responsible for the on-site supervision of the construction activities at the Riverview Project moving forward." (*Id.* [Doc. 41] ¶ 100.)

Silverline, the subcontractor, asserted in correspondence with the Coyle/Reno joint venture during the months of June and July 2013 that Coyle/Reno was improperly refusing to pay it for "extra work" that it had directed Silverline to do during the course of the project. (*JSDUF* [Doc. 41] ¶¶ 19–23.) It accused Coyle/Reno of negligence and bad faith with respect to its management of changes to the MSA and its payments to Silverline. (*Id.* [Doc. 41] ¶ 24.) Silverline demanded mediation of its claims, and it threatened to sue Coyle/Reno if the disputes could not be resolved informally. (*Id.* [Doc. 41] ¶¶ 25–27.)

## B. The Insurance Policies at Issue

There are two insurance policies at issue in this case.

The first was a policy issued by Crum & Forster to the Coyle/Reno joint venture, covering the policy period June 8, 2012 to June 8, 2014 ("the Coyle/Reno Policy"). (*JSDUF* [Doc. 41] ¶ 50.) This policy provided general commercial liability coverage

3

with a general aggregate limit of $1,000,000, Errors and Omissions coverage with a $1,000,000 per-claim limit, and a per-claim liability deductible of $10,000. (*Id.* [Doc. 41] ¶ 51.) This was a "burning limits" policy—defense costs reduced the policy limits. (*See id.* [Doc. 41] ¶ 53.) This policy provided that the joint venture's members were also insured, "but only with respect to the conduct of [Coyle/Reno's] business." (*Id.* [Doc. 41] ¶ 54.)

The second policy was issued by Crum & Forster to Reno Contracting, covering the policy period August 1, 2013 to August 1, 2014 ("the Reno Contracting Policy").[2] (*JSDUF* [Doc. 41] ¶ 66.) This policy had general aggregate and per-claim limits of $5,000,000. (*Id.* [Doc. 41] ¶ 66.) It required that claims be made and reported during the policy period. (*Id.* [Doc. 41] ¶¶ 69, 71.) As relevant here, it covered "damages" resulting from "wrongful act[s]." (*Id.* [Doc. 41] ¶ 70.) "Damages were defined as follows:

> "Damages" means the monetary amount of any judgment, award or settlement that an insured becomes legally obligated to pay as a result of a "claim" or "suit." "Damages" does not include "cleanup costs," equitable or nonpecuniary relief, disgorgement of profits, sanctions, fines or penalties.

(*Id.* [Doc. 41] ¶ 76.) "Wrongful act" was defined as follows:

> "Wrongful act" means an act, error or omission in the rendering or failure to render "professional services" by any insured covered under the Insuring Agreement of the Errors and Omissions Liability Coverage Part[.]

(*Id.* [Doc. 41] ¶ 77.)

The policy required Reno Contracting to "see to it that [Crum & Forster was] notified, in writing, as soon as practicable of an 'occurrence', offense,

---

[2] This followed a prior policy issued to Reno Contracting, covering the policy period August 1, 2012 to August 1, 2013. (*JSDUF* [Doc. 41] ¶ 67.) This prior policy is not the subject of Crum & Forster's instant motion. (*See Notice of Motion* [Doc. 29] 1.)

4

'wrongful act' or 'pollution condition' which may result in a 'claim' or 'suit' against any insured."

(*JSDUF* [Doc. 41] ¶ 74.)

This policy explicitly stated:

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

(*Policy No. PKC-100538* [Doc. 29-5, Exh. 4] 6.) The Coyle/Reno joint venture was not a named insured on this policy. (*JSDUF* [Doc. 41] ¶ 78.)

### C. The Underlying Litigation

On September 16, 2013, the Coyle/Reno joint venture filed suit against Silverline in San Diego Superior Court, alleging, *inter alia*, breach of the MSA. (*JSDUF* [Doc. 41] ¶ 28.) Silverline filed a cross-complaint against Coyle/Reno, alleging that the joint venture had failed to pay for services rendered pursuant to the MSA. (*Id.* [Doc. 41] ¶ 30.) Silverline alleged that Coyle/Reno had modified the construction plans for the Riverview Project by directing Silverline to perform extra work without confirming the changes in writing, as the MSA would require. (*Id.* [Doc. 41] ¶ 32.) It further alleged that Coyle/Reno falsely denied that it had directed the extra work be performed and denied the request for payment for the work. (*JSDUF* [Doc. 41] ¶ 33.)

The Silverline cross-complaint, filed on November 18, 2013, asserted claims against Coyle/Reno and other parties for: (1) breach of contract; (2) quantum meruit; (3) account stated; (4) open book account; (5) promissory estoppel; (6) equitable indemnity; (7) implied indemnity; (8) contribution and apportionment; (9) declaratory relief; (10) claim against a contractor's license bond; (11) claim against a payment bond; (12) negligence; (13) breach of the covenant of good faith and fair dealing; (14) fraud by intentional misrepresentation; (15) fraud by concealment; (16) negligent misrepresentation; (17) conversion; (18) enforcement of a stop notice; and (19)

professional negligence.[3]  (*JSDUF* [Doc. 41] ¶ 35; *Silverline Cross-Compl.* [Doc. 29-20, Exh. 18].)  Silverline filed an amended cross-complaint on April 10, 2014.  (*JSDUF* [Doc. 41] ¶ 37; *Silverline FACC* [Doc. 29-21, Exh. 19].)  This pleading asserted many of the same claims as the first cross-complaint against both Coyle/Reno and Reno Contracting.[4]  (*Silverline FACC* [Doc. 29-21, Exh. 19].)  The underlying action and a number of related cases pertaining to the Riverview Project were ultimately consolidated in the Santa Clara Superior Court.  (*JSDUF* [Doc. 41] ¶¶ 40–46.)

On March 30, 2016, Riverview Capital and Riverview Property Holdings, LLC (collectively, "Riverview") filed a cross-complaint against Coyle/Reno and Reno Contracting, among others, in the consolidated action in the Santa Clara Superior Court. (*JSDUF* [Doc. 41] ¶ 47.)  Riverview asserted claims against Coyle/Reno and Reno Contracting for: (1) breach of contract; (2) indemnity; (3) declaratory relief: liquidated damages; (4) reformation (against Coyle/Reno only); (5) declaratory relief: adjusted guaranteed maximum price; (6) declaratory relief: contingency accounting; (7) declaratory relief: adjusted contract time; (8) specific performance; (9) declaratory relief: contract documents; (10) enforcement of performance bond (against Coyle/Reno and Travelers, Coyle/Reno's surety); and (11) enforcement of payment bond (against Coyle/Reno and Travelers).  (*JSDUF* [Doc. 41] ¶ 48; *Riverview Cross-Compl.* [Doc. 29-24, Exh. 22].)

The facts behind Riverview's suit against Reno Contracting were related to those in the Silverline action.  Riverview alleged that Coyle/Reno breached its contract with Riverview by "[f]ailing to pay subcontractors . . . the amounts due to them, thereby causing mechanic's liens to be recorded and stop payment notices to be served," "holding

---

[3] Despite the JSDUF's apparent assertion to the contrary, the last claim for relief, for professional negligence, was not asserted against Coyle/Reno.  (*Silverline FAC* [Doc. 29-20, Exh. 18].)

[4] Again, despite the JSDUF's apparent assertion to the contrary, the last claim for relief, for professional negligence, was not asserted against Coyle/Reno or Reno Contracting.  (*Silverline FACC* [Doc. 29-21, Exh. 19].)

6

the Project hostage by implicit and explicit threats that unless Riverview paid disputed amounts, and disputed change order requests, Coyle/Reno would stop work and/or abandon all or portions of the Project," "fail[ing] to defend Riverview . . . in connection with actions by subcontractors to foreclose on mechanic's liens and enforce stop payment notices," and "issu[ing] [change order requests] seeking compensation and time for purported Riverview-caused delays . . . which Riverview contend[ed] [were] neither timely nor properly substantiated and [did] not entitle Coyle/Reno to additional time under the [Riverview] Contract." (*JSDUF* [Doc. 41] ¶ 49.)

### D. Procedural Background

Reno Contracting first provided notice to Crum & Forster of the underlying litigation on January 27, 2014. (*JSDUF* [Doc. 41] ¶ 56.) On that date it requested a defense under the Coyle/Reno Policy. (*Id.*) Four days later, on January 31, 2014, Reno Contracting requested that Crum & Forster provide a defense to Reno Contracting in the underlying litigation pursuant to the Reno Contracting Policy. (*JSDUF* [Doc. 41] ¶ 79.)

On July 22, 2014, Crum & Forster agreed to defend Reno Contracting as to the claims made by Silverline subject to the Coyle/Reno Policy's eroding $1,000,000 per-claim limit and a full reservation of rights. (*Id.* [Doc. 41] ¶ 58.) However, it declined to defend or indemnify under the Reno Contracting Policy, citing Reno Contracting's failure to comply with the knowledge and reporting requirements of that policy. (*Id.* [Doc. 41] ¶¶ 80, 111; *July 22, 2014 Letter* [Doc. 29-26, Exh. 24.].) According to Crum & Forster, the January 31, 2014 notice was ineffective because Reno Contracting had knowledge of a "wrongful act" before the policy period began through its receipt of the March 2013 stop payment notice. (*JSDUF* [Doc. 41] ¶ 81; *July 22, 2014 Letter* [Doc. 29-26, Exh. 24.] 6–7.)

On June 11, 2015, Coyle/Reno informed Crum & Forster that Riverview planned to file suit against it. (*JSDUF* [Doc. 41] ¶ 59.) On August 10, 2015, Coyle/Reno and Reno Contracting informed Crum & Forster that Riverview had terminated Coyle/Reno

7

from the Riverview Project. (*Id.* [Doc. 41] ¶ 60.) It requested that Crum & Forster provide a defense under the Coyle/Reno Policy for any resulting claims by Riverview. (*Id.*) Crum & Forster agreed to defend Reno Contracting as to the Riverview Cross-complaint pursuant to the Coyle/Reno Policy, subject to the Coyle/Reno Policy's eroding $1,000,000 per-claim limit and a full reservation of rights. (*Id.* [Doc. 41] ¶ 61.)

On June 27, 2016, in response to a tender, Crum & Forster informed Reno Contracting that it would neither defend nor indemnify it under the Reno Contracting Policy because Reno Contracting had not informed Crum and Forster of the Riverview cross-complaint until August 10, 2015, after the policy period had ended. (*JSDUF* [Doc. 41] ¶¶ 83, 121.)

On July 21, 2017, Crum & Forster informed Reno Contracting that its defense of Reno Contracting and its co-insureds had exhausted the $1,000,000 limit of the Coyle/Reno Policy. (*JSDUF* [Doc. 41] ¶ 63.) Thus, Crum & Forster informed Reno Contracting that it would cease contribution to its defense. (*See id.* [Doc. 41] ¶¶ 64–65.) Reno Contracting settled Riverview's claims against it in October of 2017. (*JSDUF* [Doc. 41] ¶ 141; *Settlement Agreement* [Doc. 35-7, Exh. W].) The claims of Coyle/Reno and Silverline against one another were later brought to a judgment by which neither party prevailed against the other. (*JSDUF* [Doc. 41] ¶ 41; *Judgment after Trial* [Doc. 36-3, Exh. 34].)

Reno Contracting filed this action against Crum & Forster in San Diego Superior Court on November 15, 2017. (*Compl.* [Doc. 1-2, Exh. 1].) It alleged: (1) breach of contract through failure to defend; (2) breach of the implied covenant of good faith and fair dealing through failure to defend; (3) breach of contract through failure to indemnify; (4) breach of the implied covenant of good faith and fair dealing through failure to indemnify; (5) breach of contract through failure to settle; and (6) breach of the implied covenant of good faith and fair dealing through failure to settle. (*Id.*) Crum & Forster removed the case to this Court on the basis of diversity of citizenship on February 28, 2018. (*Notice of Removal* [Doc. 1].)

8

1     Defendant Crum & Forster filed the instant motion for partial summary judgment
2 on November 2, 2018, seeking judgment in its favor on "the breach of contract claim for
3 relief" on the basis that the Reno Contracting Policy provides no coverage for the
4 underlying litigation. (*Def.'s Notice of Mot.* [Doc. 29].) The Complaint states three
5 claims for breach of contract—the first, third, and fifth claims for relief, for failure to
6 defend, to indemnify, and to settle, respectively. (*Compl.* [Doc. 1-2, Exh. 1].) Nowhere
7 else in the notice or in the points and authorities does the motion specify what relief it
8 requests. Nor does it explain why a lack of coverage might justify judgment on any
9 particular claims for relief in the Complaint. See Part III.B., *infra*.

10     Plaintiff opposes the motion. [Doc. 35.]

## II. LEGAL STANDARD

13     Summary judgment is appropriate under Rule 56 when the moving party
14 demonstrates the absence of a genuine issue of material fact and entitlement to judgment
15 as a matter of law. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322
16 (1986). A fact is material when, under the governing substantive law, it could affect the
17 outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A
18 dispute about a material fact is genuine if "the evidence is such that a reasonable jury
19 could return a verdict for the nonmoving party." Id.

20     A party seeking summary judgment always bears the initial burden of establishing
21 the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving
22 party can satisfy this "burden of production" in two ways: (1) by presenting evidence that
23 negates an essential element of the nonmoving party's case; or (2) by demonstrating that
24 the nonmoving party failed to make a showing sufficient to establish an element essential
25 to that party's case on which that party will bear the burden of proof at trial. See id. at
26 322–25; Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102–03
27 (9th Cir. 2000) (explaining relevant burden-shifting terminology). "Disputes over

irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"[T]he district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the Court is not obligated "to scour the record in search of a genuine issue of triable fact . . . ." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

If the moving party meets its initial burden of production on the motion, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on a motion for summary judgment. Anderson, 477 U.S. at 255.

## III. DISCUSSION

### A. There is No Genuine Dispute that Reno Contracting is Not an Insured under the Reno Contracting Policy as to the Underlying Litigation, all of which stems from the Joint Venture Coyle/Reno's Conduct as a General Contractor for the Riverview Project.

The Reno Contracting Policy specifies:

> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

(*Policy No. PKC-100538* [Doc. 29-5, Exh. 4] 6.) The Coyle/Reno joint venture was not a named insured on this policy. (*JSDUF* [Doc. 41] ¶ 78.)

There is no genuine dispute that all claims in the underlying litigation arose from the Riverview Project, the general contractor for which was the Coyle/Reno joint venture. (*JSDUF* [Doc. 41] ¶¶ 1–5, 35–49.) Reno Contracting was not an insured under the Reno Contracting Policy with respect to Coyle/Reno's conduct—even if it was a defendant in subsequent litigation resulting from Coyle/Reno's project. (*Policy No. PKC-100538* [Doc. 29-5, Exh. 4] 6.)

This principle is simple. The addition of the joint venture partner into the business posed an additional risk for which the insurance company was not compensated by the policy.

What Plaintiff admits happened here is a good illustration of this principle. Reno Contracting went into business with Coyle Residential, forming Coyle/Reno. By the terms of the MSA, Coyle Residential would handle on-site supervision of the construction activities of the Riverview Project while Reno Contracting handled off-site administrative duties. (*JSDUF* [Doc. 35] ¶¶ 86–87.) Only, Coyle Residential did not "competently provide supervision of the construction activities at the Riverview Project[.]" (*Id.*) This prompted "significant problems on the construction site" and, ultimately, a stop payment notice to issue from a subcontractor. (*See JSDUF* [Doc. 41]

11

¶¶ 14–15, 98.) According to Plaintiff, "Coyle Residential effectively abandoned the joint venture, leaving Reno Contracting solely responsible for the on-site supervision of the construction activities at the Riverview Project moving forward." (*Id.* [Doc. 41] ¶ 100.) The project grinded to a halt. Costly litigation followed—both with Silverline, and with the property owner. This litigation was a consequence of the joint venture's conduct as general contractor. (*JSDUF* [Doc. 41] ¶¶ 1–5, 35–49.)

This eventuality was within the scope of the risk undertaken by a commercial entity going into business with a joint venture partner. That entity's insurance company would have been entitled to calculate the additional risks of the joint venture into the premiums of a policy. This particular policy required that any joint venture be named so as to allow for the calculation of an appropriate premium. (*See Policy No. PKC-100538* [Doc. 29-5, Exh. 4] 6.) No joint venture was named. No coverage existed with respect to a joint venture's conduct, or risks arising therefrom. (*See id.*) This includes the Riverview Project, the general contractor for which was Coyle/Reno.

Two of Plaintiff's points in opposition bear brief discussion.

First, Plaintiff argues that Crum & Forster should be equitably estopped from contending that Reno Contracting has no coverage under the Reno Contracting Policy for Coyle/Reno's conduct, as it did not rely on the joint venture limitation in its earlier letters as a basis for declining to defend under the policy. Plaintiff contends that it detrimentally relied on Crum & Forster's representation that it qualified as an insured notwithstanding that limitation and denial of coverage on another basis—the failure to comply with the knowledge and reporting requirements—in later settling the case. (*Pl.'s Opp'n* [Doc. 35] 13:23–16:24.)

//
//
//
//
//

12

18-CV-0450 W (JLB)

> Generally[,] " 'four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' "

Colony Ins. Co. v. Crusader Ins. Co., 188 Cal. App. 4th 743, 751 (2010).

Reno Contracting argues that Crum & Forster's denial of coverage on another ground instead of this one induced it to assume liability for its surety's settlement contribution and to release its claims against Riverview, the property owner. (*Pl.'s Opp'n* [Doc. 35] 8–9, 14.) Although Crum and Forster's initial reservation of rights letter asserted that Reno Contracting was an insured in spite of the joint venture limitation, it also denied coverage altogether under the Reno Contracting policy on a separate basis. (*July 22, 2014 Letter* [Doc. 29-26, Exh. 24].) And even if Crum & Forster could somehow have intended its denial of coverage on another ground to cause Reno Contracting to assume liability for its surety's settlement contribution or to release its claims against the property owner, California law is " 'well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom[.]' " Advanced Network, Inc. v. Peerless Ins. Co., 190 Cal. App. 4th 1054, 1066 (2010) (quoting Aetna Cas. & Sur. Co. v. Richmond, 76 Cal. App. 3d 645, 653 (1977)).[5]  Equitable estoppel cannot and does not apply here.

Second, Plaintiff argues that because Reno Contracting managed the site itself on its own after Coyle Residential abandoned the project, "[Crum & Forster] cannot

---

[5] Plaintiff argues that the California Supreme Court's decision in Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 34 (1995) somehow abrogated this point of law. Plaintiff is mistaken.

13

18-CV-0450 W (JLB)

reasonably argue that all of the claims asserted against [Reno Contracting] in the [underlying litigation] arose from the conduct of [Coyle/Reno]." (*Pl.'s Opp'n* [Doc. 35] 11–12.) But by Plaintiff's own admissions in this brief and in the JSDUF, this situation arose in the first place because of the additional risks Reno Contracting took in entering into a joint venture with Coyle Residential for the Riverview Project. Plaintiff did not buy insurance coverage for these risks via the Reno Contracting Policy.

The Reno Contracting Policy provided no coverage for the underlying litigation, all of which arose from Coyle/Reno's involvement in the Riverview Project as general contractor.

### B. Defendant Fails to Demonstrate Entitlement to Judgment as a Matter of Law on any Claims for Relief in the Complaint.

As described in Part II, *supra*, summary judgment is appropriate under Rule 56 when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Here, Defendant demonstrates the absence of a genuine dispute that the Reno Contracting Policy did not cover Reno Contracting's liability as to the underlying litigation, all of which resulted from its joint venture with Coyle Residential with respect to the Riverview Project. But Defendant does not demonstrate entitlement to judgment as a matter of law as to any claims in the Complaint. A determination of lack of coverage under the relevant policy may have some relationship to the three breach of contract claims—for failure to defend, to indemnify, or to settle, respectively. (*Compl.* [Doc. 1-2,

Exh. 1].) But Defendant does not argue the point. And the Court will not make arguments for the moving party on a motion for summary judgment.[6]

As Defendant does not meet its initial burden of demonstrating entitlement to judgment as a matter of law as to the claims for relief in the Complaint, the motion for partial summary judgment must be denied as to these claims.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

---

[6] The notice of motion states, "[Crum & Forster], and hereby does, move this Court for partial summary judgment against [Reno Contracting] on Plaintiff's claim for breach of contract . . . ." (*Notice of Mot.* [Doc. 29] 1.) As noted above, the Complaint states three claims for relief labeled breach of contract. (*Compl.* [Doc. 1-2, Exh. 1].) The motion does not discuss any of them. (*Def.'s Mot.* [Doc. 29].)

## IV. CONCLUSION & ORDER

Defendant's motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**. [Doc. 29.]

Specifically, it is denied as to the claims in Plaintiff's Complaint.

However, per Rule 56(g),[7] the Court states that the following is not in genuine dispute and is hereinafter established in the case:

The Reno Contracting Policy provided no insurance coverage for the underlying litigation.

**IT IS SO ORDERED.**

Dated: February 21, 2019

Hon. Thomas J. Whelan
United States District Judge

---

[7] "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."

Fed. R. Civ. P. 56(g).